**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| REBECCA S. MAYDEN DUDLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-04-1165-L |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Rebecca Dudley, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Ms. Dudley's application for supplemental security income benefits. United States District Judge Tim Leonard has referred this matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

At the time of the Commissioner's decision, Ms. Dudley was 42 years old. She alleged disability due to hepatitis B and C, back and shoulder pain, stomach problems and depression. Despite her significant physical impairments, in this action, Ms. Dudley's

challenge to the decision of the Commissioner to deny benefits is solely based upon the ALJ's findings about functional limitations resulting from her mental impairments.

## I. The Administrative Decision

The Administrative Law Judge (ALJ) issued his decision on June 17, 2003, and found Ms. Dudley not disabled. AR 16-23. Following the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ found at step one that Ms. Dudley had not engaged in substantial gainful activity since her alleged disability onset date of December 15, 2000. AR 17, 22. At step two, the ALJ determined that Ms. Dudley suffers from hepatitis B and C, depression, back and shoulder pain and stomach problems and that these impairments are severe within the meaning of the Social Security regulations. AR 19, 22. At step three, the ALJ determined Ms. Dudley's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19, 22.

The ALJ next determined that Ms. Dudley has the residual functional capacity to perform light work; however, due to hepatitis, she is unable to perform employment involving food service. AR 20, 22. Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that Ms. Dudley could not return to her past relevant work as a short order clerk. AR 20, 22. At step five of the sequential evaluation process, the ALJ determined that Ms. Dudley could perform light, unskilled work as a laundry folder and ticket taker. AR 21, 22. In addition, the ALJ identified sedentary work Ms. Dudley could perform including small parts sorter and small parts assembler. AR

21, 22. The ALJ found that all of these jobs exist in significant numbers both in Oklahoma and in the national economy. AR 21, 22. Therefore, the ALJ determined Ms. Dudley was not disabled. AR 21, 22, 23.

Ms. Dudley appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied Ms. Dudley's request for review, AR 7-9, making the ALJ's decision the final decision of the Commissioner.

## II.     Issues Presented for Judicial Review

Ms. Dudley challenges the ALJ's decision that she is not disabled on the following grounds: (1) the ALJ erred as a matter of law by making conclusory findings as to the mental areas of functioning, known as the psychiatric review technique (PRT) analysis, and the ALJ's PRT findings are not supported by substantial evidence; and (2) the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence because the ALJ failed to include in the RFC any functional limitations resulting from her mental impairments.

## III.    Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## IV.   Analysis

### A.   The ALJ's PRT Analysis

Ms. Dudley first claims that the ALJ's PRT analysis is based on conclusory findings and not supported by substantial evidence. The regulations governing evaluation of a claimant's mental impairments provide for a psychiatric review "technique" that must be followed. *See* 20 C.F.R. § 416.920a. The technique is used first at step two of the sequential evaluation process to determine whether a mental impairment is "severe" within the meaning of the regulations. *See id.* § 416.920a(d). If the impairment is severe, the technique is then used at step three to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. *See id.*, § 416.920a(d)(2). The conclusory findings challenged by Ms. Dudley are those made by the ALJ in the context of his step three analysis.

At step three of the sequential evaluation process, the ALJ had to determine whether Ms. Dudley was of listing level for her mental impairments. The listings governing mental

disorders are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 *et seq*. Each listing has three components: paragraph A criteria -- a set of medical findings; paragraph B criteria -- a set of impairment-related functional limitations; and paragraph C criteria -- additional functional criteria. *See id*. § 12.00 (A).

The ALJ determined that Ms. Dudley had been diagnosed with depression and dependent personality disorder. AR 19. Ms. Dudley, therefore, met the A criteria for Affective Disorders, Listing 12.04, and Personality Disorders, Listing 12.08.

The ALJ then made the following B and C criteria findings:

> The claimant has been diagnosed with depression and dependent personality disorder. Under criteria "B" of the Listing the claimant has a mild degree of restriction of activities of daily living, as she is able to take care of her personal grooming and perform light household activities. She has a moderate degree of difficulties in maintaining social functioning as she takes a childlike stance around other people. She said she eats out with her family, but does not have other social activities. She has moderate difficulties in maintaining concentration, persistence and pace as she testified that she starts projects and does not finish them and cannot remember where she puts things and there is insufficient evidence to document episodes of decompensation. The evidence does not establish the presence of "C" criteria.

AR 19. As reflected in the ALJ's findings, paragraph B functional limitations are assessed using four criteria: activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. *Id*., § 12.00(C). A claimant's mental disorder is of listing level under Listings 12.04 and 12.08 if the mental disorder results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration,

5

persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* § 12.04(B); § 12.08(B).

The regulations governing mental disorders provide the following guidance in determining whether a limitation is marked:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. [Citation omitted.]

*Id*. The regulations include a further description of what constitutes a "marked" limitation for each of the first three criteria. *Id*., § 12.00 (C)(1)-(3). For example, the regulations provide the following with respect to whether an individual has a marked limitation in activities of daily living:

> We do not define "marked" by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.

*Id*. § 12.00(C)(1); *see also* § 12.00(C)(2) (social functioning) and § 12.00(C)(3) (concentration, persistence or pace).

The ALJ's evaluation of the paragraph B and C criteria is based almost exclusively on Ms. Dudley's testimony as to her daily activities. He cites no medical evidence to support his findings. He also fails to cite the Psychiatric Review Technique Form completed by the

6

psychological consultant, Burnard L. Pearce, Ph.D., in April 2002 and confirmed on May 24, 2002, the date of the denial of Ms. Dudley's request for reconsideration. AR 186-199; 31-32. However, the conclusions reached by Dr. Pearce are consistent with the ALJ's conclusions. AR 186, 189, 196.

Ms. Dudley does not directly challenge the ALJ's step-three finding that her mental impairments are not of listing level. Rather, Ms. Dudley finds the definition of "marked" provided by the listing regulations governing mental disorders "vague" and contends the definition of "marked" provided by the listing regulations governing human immunodeficiency virus (HIV) infection should instead govern because they "clarify" what is meant by marked. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) with § 14.00(D). Applying that definition, Ms. Dudley contends the evidence cited by the ALJ is more indicative of marked limitations and, therefore, the ALJ's findings are not supported by substantial evidence.

Ms. Dudley further contends the guidance provided in defining what constitutes "marked" for purposes of HIV infection as to each of the first three B criteria should apply. *See* § 14.00(D)(8). For example, in determining whether an individual with HIV infection has a marked limitation in activities of daily living the regulations provide:

> An individual with HIV infection who, because of symptoms such as pain imposed by the illness or its treatment, is not able to maintain a household or take public transportation on a sustained basis or without assistance (even though he or she is able to perform some self-care activities) would have marked limitation of activities of daily living.

*Id*. § 14.00(D)(8).

While, understandably, Ms. Dudley wants those definitions that are potentially most favorable to her case to apply, this Court has no authority to alter the regulations which govern her claim. A definition of marked is contained in the mental disorder listings and specific guidance is provided as to how that definition should be interpreted when applying the B criteria. Therefore, the regulations governing HIV infection are of no relevance.

Ms. Dudley does not cite additional or contrary evidence in support of this claim of alleged error. Therefore, Ms. Dudley fails to demonstrate how the ALJ's findings as to the degree of her limitations are not supported by substantial evidence. This Court may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, *supra*, 395 F.3d at 1172. Because Ms. Dudley fails to demonstrate -- under the applicable mental disorder regulations -- that the ALJ's findings at step three of the sequential evaluation process are erroneous, her first claim of error is without merit.

**B.      The ALJ's RFC Determination**

Ms. Dudley's second claim of error, however, has merit. She claims the ALJ's RFC determination is erroneous because it contains no restrictions related to her mental impairments.

The ALJ made the following RFC determination: "[T]he claimant retains the residual functional capacity to perform light work, however, due to hepatitis she is unable to perform employment involving food service." AR 20. *See also* AR 22. Ms. Dudley contends that the RFC determination is counter to the ALJ's PRT findings, set forth above, that she has at least moderate impairments in social functioning and in concentration, persistence and pace.

The RFC determination is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *1. "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." *Id.* at *3. Unlike the limitations identified in the B and C criteria for purposes of step 3 of the sequential evaluation process used to rate the severity of a mental impairment, the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . and summarized on the PRTF." *Id.* at *4.

Although not raised by Ms. Dudley in support of her claim of error, it is significant that the ALJ did not discuss the Mental Residual Functional Capacity Assessment completed by the consultative psychologist, Dr. Pearce, in April 2002. AR 200-205. Dr. Pearce found that Ms. Dudley was markedly limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. AR 200. He also found Ms. Dudley was markedly limited in her ability to interact appropriately with the general public. AR 201. He concluded that Ms. Dudley could perform simple tasks and "relate only on a superficial, incidental basis." AR 202. These findings are consistent with the Psychological Report prepared by Dr. Kates one month prior in March 2002. AR 171-175. Although the ALJ discussed Dr. Kates' findings for purpose of his step three determination, AR 19, he did not discuss her findings when making his RFC determination. Because the record supports the mental limitations identified in Dr. Pearce's Mental Residual Functional Capacity

Assessment, it was error for the ALJ to fail to address why he did not include these limitations in his RFC determination.  *See* 20 C.F.R. § 416.927(f)(2) and SSR 96- 6p, 1996 WL 374180, at *2.

The Commissioner contends that the ALJ's error is harmless because these mental limitations were included in hypothetical questions presented to the vocational expert.  The ALJ asked the vocational expert to identify jobs that could be performed by an individual of Ms. Dudley's age, education, work experience and the residual functional capacity for light work.  AR 263-264.  The vocational expert identified the light jobs of food assembler, food demonstrator, laundry folder, and ticket taker.  AR 264-265.  He also identified the sedentary jobs of small parts sorter and small parts assembler.  AR 264-265.

The ALJ then added further limitations in his cumulative hypothetical questioning of the vocational expert.  Pertinent to Ms. Dudley's mental limitations, the ALJ included these restrictions: unable to deal with the public on more than a superficial basis or to have extensive interpersonal contact on the job site (AR 268); and able to understand and perform only routine tasks and follow simple instructions (AR 268-269).  The vocational expert testified that the inability to deal with the public would eliminate the food demonstrator job but no other jobs would be eliminated by these limitations.  AR 268.  The Commissioner contends these limitations described in the hypothetical questions to the vocational expert "reasonably accommodate Plaintiff's mental impairments."  *See* Brief in Support of the Commissioner's Decision at 13.

However, Ms. Dudley's attorney further questioned the vocational expert and specifically asked whether a marked limitation in dealing with the public would eliminate any of the jobs. The vocational expert testified that the job of ticket taker would be eliminated and the job of laundry folder "may be eliminated by that." AR 272. The limitation would not affect the jobs of small parts sorter and small parts assembler. The vocational expert also testified that the latter two jobs require only simple one- and two-step instructions. AR 272.

The ALJ made the following finding at step five:

> Based on the testimony of the vocational expert, the undersigned has concluded that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.

AR 21. The ALJ relied upon the vocational expert's testimony and found, at step five, that Ms. Dudley could perform the jobs of small parts sorter (500 jobs available in Oklahoma and 11,000 jobs in the national economy); and small parts assembler (1,900 jobs available in Oklahoma and 103,000 jobs in the national economy) as well as the jobs of laundry folder (3,300 jobs in Oklahoma and 66,000 jobs in the national economy) and ticket taker (400 jobs in Oklahoma and 33,000 jobs in the national economy). AR 21. It appears, therefore, the ALJ rejected mental limitations to the degree reflected by the Mental Residual Functional Capacity Assessment because he did not limit the jobs Ms. Dudley could perform to those of small parts sorter and small parts assembler.

The Tenth Circuit has repeatedly warned against judicial post hoc justification of the ALJ's decision. *See, e.g., Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("Courts [should] avoid usurping the administrative tribunal's responsibility to find the facts."). In addition, the Tenth Circuit has narrowly construed the circumstances pursuant to which a harmless error analysis may be applied. *See Allen*, 357 F.3d at 1145. Such analysis may only be applied in the "right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). The harmlessness of the error at step five is further complicated when, as here, the Commissioner asks the Court to extract certain jobs from the ALJ's significant numbers findings. *See id.* The Tenth Circuit has held that several factors accompany the proper evaluation of the significant numbers issue. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330-1332 (10th Cir. 1992) (level of claimant's disability, including combination of impairments, reliability of VE's opinion, what jobs claimant could perform, travel necessary for claimant to get to work, isolated nature of jobs, and skills and training necessary for claimant to perform the work). In addition, the decision must be based upon the ALJ's common sense in weighing the statutory language and applying the criteria to a claimant's particular factual situation. *Id.* Therefore, when attempting to uphold the ALJ's

significant numbers analysis by extrapolating certain jobs from that finding, the court is almost certain to draw factual conclusions on behalf of the ALJ, a function the court is forbidden from performing.  *See Allen*, 357 F.3d at 1144.

In this case, the error committed by the ALJ cannot be remedied by application of the harmless error rule.  First, it appears the ALJ rejected Ms. Dudley's mental limitations in making the RFC determination even though the evidence in the record supports such limitations.  The ALJ did rate the degree of Ms. Dudley's functional limitations for purposes of analyzing the paragraph B criteria at step three of the sequential evaluation process.  He did not, however, discuss these limitations in the context of the RFC determination.  To the extent the ALJ rejected the Mental Residual Functional Capacity Assessment of the consultative psychologist, Dr. Pearce, the ALJ failed to explain his reasons for doing so as required by the regulations.  Second, the ALJ did not evaluate whether the sedentary jobs of small parts sorter and small parts assembler, standing alone, existed in significant numbers. *Compare Chavez v. Barnhart,* 126 Fed. Appx. 434, 436 (10th Cir. Feb. 3, 2005) (unpublished op.)[1] (remand required where claimant could perform only one of three jobs identified by the vocational expert and ALJ did not evaluate whether that job, standing alone, existed in significant numbers); *Rhodes v. Barnhart*, 117 Fed. Appx. 622, 632 (10th Cir. Sept. 7, 2004) (unpublished op.) (finding that "because the ALJ failed to evaluate the *Trimiar* factors and

---

[1]The unpublished decisions referenced in this Report are cited for their persuasive value in accordance with 10th Cir. R. 36.3(B).

make specific factual findings regarding the numerical-significance requirement" the court could not properly review the issue).

The district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. In such circumstances, it is more appropriate for the ALJ to remedy the error in the first instance. Therefore, it is recommended that the matter be remanded to the ALJ for a proper RFC determination including any mental limitations borne out by the evidentiary record. The hypothetical questions posed to the vocational expert must state Ms. Dudley's impairments "with precision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991). In addition, the significant numbers determination must comply with the requirements as set forth in *Trimiar*.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by October 17th, 2005. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   27th   day of September, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE